UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL SHAVERS,

    Plaintiff,

v.                                                           Case No. 2:07-cv-171
                                                         HON. R. ALLAN EDGAR
DAVID BERGH, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Shavers, who is currently confined at the Alger Maximum Correctional Facility, claims that defendants Stasewich and Enterline engaged in excessive force and harassed him in retaliation for his use of the grievance procedure. Plaintiff also asserts state law claims of assault and battery. The court previously dismissed claims asserted against defendants Bergh and Rapelje. This matter is set for trial on October 19, 2009. Defendants Stasewich and Enterline move to dismiss plaintiff's Eighth Amendment claims and state law claims for assault and battery.

Plaintiff alleges that on May 2, 2007, defendants Enterline and Stasewich escorted plaintiff to the nurses clinic. Plaintiff was placed in belly chains and handcuffs. Defendants Enterline and Stasewich escorted plaintiff back to his cell after he was examined. Defendant Stasewich allegedly told plaintiff "Shavers you are gonna stop filing them grievances against [corrections officer] Holman." Plaintiff had filed several grievances against corrections officer Holman. Plaintiff claims that because of his grievances, officer Holman was removed from the

segregation unit. Plaintiff stated that "he have a right to file against Holman and that it was none of their business." Plaintiff asserts that both Stasewich and Enterline stated "that's where the plaintiff was wrong, it is their business."

Plaintiff was taken to his cell. Plaintiff claims that defendant Stasewich intentionally stood to the side of the cell to block the camera view. Defendant Enterline gave defendant Stasewich the lead strap of the belly chain. Defendant Enterline unlocked the belly chain padlock and stepped back. Plaintiff alleges that defendant Stasewich "forcefully yerk/pull on the belly chain lead strap." Plaintiff claims that this took him by surprise and caused him "to lose his balance and/or footing [causing him to] slide down backwards on the cell door." Plaintiff claims that he did not hit the cell floor. When plaintiff regained his footing he stated to Stasewich: "What the hell is [sic] you trying to do hurt me?" Plaintiff claims that defendant Stasewich then grabbed the belly chain strap and "forcefully yerk/pull upon the bellychain," causing plaintiff to collide with the cell door. Plaintiff claims that he struggled to unloop both ends of the belly chain from around his waist. Plaintiff claims that he then stuck both hands out of the food slot and defendant Enterline removed his handcuffs. Plaintiff claims that he suffered with a back injury and that he repeatedly kited health services, but the nurse told him to take over the counter pain medications.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of

material fact for trial. *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Enterline argues that he should be dismissed because plaintiff did not exhaust a grievance against him.  Plaintiff filed a grievance which states:

> RUO Stasewich violated applicable policy prohibiting assaults upon inmates by use of handcuffs or belly chain.  Warden Bergh and Deputy Warden Rapelje is ratifying Stasewich assaults upon inmates.  <u>Statement of Supporting Facts</u> While being escorted back from seening [sic] the nurse <u>the unit camera will show</u> another RUO [Enterline] was hold [sic] <u>the belly chain lead strap.</u>  However when I arrived at my cell, and as I was whiring [sic] into my cell <u>Stasewich then motion to be given the lead strap,</u> after my cell door closed the other RUO professionally unlock the lock itself off the belly chain and stood back from my cell door to allow me to - as all inmates are procedurally - to freely and voluntarily remove the belly chain from around their waist, turn around to place the belly chain outside their food slot and their hands to allow the handcuffs to be removed off

> their wrists. However, as indicated when the other RUO unlocked the belly chain lock and stepped back from my cell door, <u>the unit camera will show</u>, Stasewich, pressing his body on my cell door to block the camera adequate view of him in short jerks snatching the belly chain from around my waist and out the food slot, at which time the other RUO [Enterline] then stepped back to my cell door to remove the handcuff off my wrist and walk away. Stasewich hesitated for my reaction then close the food slot. I have witness Stasewich assault, not feed, make false claims and retaliate other inmate.

It is clear that plaintiff did not assert that defendant Enterline did anything wrong. Further, it is clear that plaintiff never presented his retaliation claim in a grievance.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* In the opinion of the undersigned, because plaintiff never properly exhausted his retaliation claims or asserted any wrongdoing against defendant Enterline, plaintiff's retaliation claims should be dismissed and defendant Enterline is entitled to dismissal from this action.

Defendants also assert that plaintiff's Eighth Amendment claim should be dismissed. Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert*. *denied* 513 U.S. 1114 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis). Accordingly, every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *Hudson*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en

banc). The approximately fifteen seconds of physical discomfort suffered by Plaintiff while he was caught in the door is not sufficient to state an Eighth Amendment claim. *See Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (whirling sensation in prisoner's head after fear of guard caused him to skip supper constituted a de minimis injury and did not support claim for mental or emotional suffering under the Eighth Amendment); *Scott v. Churchill*, No. 97-2061, 2000 WL 519148, at *2 (6th Cir. April 6, 2000) (plaintiff's claim that guard grabbed his neck and threatened him did not rise to the level of an Eighth Amendment violation).

Plaintiff alleges that defendant Stasewich pulled on the lead strap twice once causing plaintiff to almost fall and the second time causing plaintiff to strike the inside of his cell door. Plaintiff claims that he suffered with back pain that he treated by taking an over the counter pain medication. In the opinion of he undersigned, plaintiff has failed to show that his Eighth Amendment rights were violated by defendant Stasewich. At best, plaintiff has alleged sufficient facts to support an assault and battery cause of action. Plaintiff has not shown that the pulling of the strap denied him "the minimal civilized measure of life's necessities." Plaintiff asserts that his medical records can support his claim. However, plaintiff has not attached his medical records to his responsive pleading. Plaintiff attempted to obtain his medical records through discovery, but failed to follow proper procedure. Furthermore, plaintiff states in his complaint that he was refused any medical treatment and was told to take an over the counter pain reliever. Taking plaintiff's allegations as true, plaintiff's medical records could not support his claim.

To the extent that plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison

administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' motion for summary judgment (Docket #127) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's remaining motions (Docket #114, #119, #123, #124, #130, #131, #132, #133, #134 and #138) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                          /s/ Timothy P. Greeley
                                          TIMOTHY P. GREELEY
                                          UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2009